No. 86-345

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

STATE OF MONTANA,

 Plaintiff and Respondent,

-vs-

GERALD ALAN GEORGE,

 Defendant and Appellant.

---

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

 For Appellant:

  Cannon & Sheehy; Edmund F. Sheehy, Jr., Helena,
  Montana

 For Respondent:

  Hon. Mike Greely, Attorney General, Helena, Montana
  Dorothy McCarter, Asst. Atty. General, Helena
  Mike McGrath, County Attorney, Helena, Montana

---

Submitted on Briefs: Sept. 25, 1986

Decided: December 30, 1986

Filed: DEC 30 1986

_Ethel M. Harrison_

---
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

This is the second time George's case has come before this Court. See State v. George (Mont. 1986), 711 P.2d 1379, 43 St.Rep. 26. Briefly recounted, on December 9, 1984, George was stopped by Helena police for driving erratically. George was also driving without a valid license and had no proof of insurance. On May 6, 1985, George was convicted by jury in the First Judicial District, Lewis and Clark County, of driving after having been adjudged an habitual traffic offender. On July 15, 1985, George was sentenced to one year imprisonment in the county jail. George failed to make a timely appeal of his sentence. However, George did appeal his conviction. We affirmed the conviction on January 7, 1986.

When George was convicted of driving after having been adjudged an habitual traffic offender, he was also on a deferred sentence for criminal mischief. Because of his habitual offender conviction, his deferred sentence was revoked and George was sentenced to five years in prison with three suspended.

On March 15, 1986, George moved to amend judgment to allow the two sentences to run concurrently, pursuant to § 46-18-401, MCA, and to credit the time served in the county jail to his prison term. The Lewis and Clark County District Court denied the motion on May 14, 1986. George appeals the denial.

We affirm the District Court.

Defendant George raises a single issue for our review: Did the District Court abuse its discretion when it denied George's motion to amend judgment?

George admits that he is an habitual traffic offender. He also admits that the District Court was justified in sentencing him to a year in the county jail, but requests that his habitual offender sentence run concurrently with his criminal mischief sentence. In Dahlman v. District Court (Mont. 1985), 698 P.2d 423, 425, 42 St.Rep. 550, 552, we held that a trial judge has no jurisdiction to vacate or modify a defendant's sentence after a valid sentence had been imposed, unless specifically authorized by statute.

George argues that § 46-18-401, MCA, specifically authorizes modification of his sentence. However, George also admits that the statute gives a sentencing judge the discretion to not merge a new sentence with an existing sentence. Section 46-18-401, MCA, provides:

> (1) <u>Unless the judge otherwise orders</u> . . .
>
> (b) whenever a person under suspended sentence or on probation for an offense committed in this state is sentenced for another offense, the period still to be served on suspended sentence or probation shall be merged in any new sentence of commitment or probation.
>
> . . .
>
> (3) If an unexpired sentence is merged pursuant to subsection (1), the court which imposed such sentence shall modify it in accordance with the effect of the merger. [Emphasis added.]

The sentencing judge's discretion is therefore limited to merger of sentence. In the absence of merger, the statute does not authorize modification of sentence. However, George tries to equate "merger of sentence" and "modification of sentence."

The terms "merger" and "modification" are distinct. "Merger" is the fusion of one sentence into another sentence. In contrast, "modification" is the alteration of the details

of a single sentence. No statute authorizes the modification of George's sentence. Under the rule of Dahlman, we find no merit in his motion to amend judgment.

Alternatively, we shall consider George's present appeal as a petition for post-conviction relief. In Dahlman, 698 P.2d at 425, we stated: "However, had defendant filed a motion for post-conviction relief, the trial judge would have had jurisdiction to modify defendant's sentence, pursuant to § 46-21-101, MCA."

Section 46-21-101, MCA, provides:

> A person adjudged guilty of an offense in a court of record who has no adequate remedy of appeal and who claims that sentence was imposed in violation of the constitution or the laws of this state or the constitution of the United States . . . may petition the court which imposed the sentence or the supreme court to vacate, set aside, or correct the sentence or revocation order.

George alleges that the District Court abused its discretion, without citing any instances of abuse. George merely asserts that the sentencing judge should not have considered George's traffic citation record, which was contained in the presentence investigation report. George's assertion runs counter to § 46-18-111, MCA, which states:

> No defendant convicted of any other offense that may result in commitment for 1 year or more in the state prison may be sentenced or otherwise disposed of before a written report of investigation by a probation officer is presented to and considered by the court unless the court deems such report unnecessary. The court may, in its discretion, order a presentence investigation for a defendant convicted of any lesser crime or offense. [Emphasis added.]

The District Court noted that George's traffic record "is the worst this Court has ever seen." The report revealed

that, prior to this action and within the last five years, George has been arrested six times for driving while his license was suspended, three times for speeding, twice for no insurance, and once for driving under the influence. On eight separate occasions, his license was suspended. Furthermore, George was arrested twice for driving without a license after he had been declared an habitual traffic offender. Based on this report, the District Court concluded that George is not a good rehabilitation risk.

The District Court noted that George showed no remorse for his crimes. When asked to explain them, he replied that he has a "lead foot." The District Court further noted that a merger of sentences would effectively negate George's jail time as an habitual traffic offender. The District Court properly concluded that George did not deserve leniency. It stated: "As his criminal history shows, George has been repeatedly granted leniency by different judges. The granting leniency to Mr. George has not resulted in his rehabilitation in the slightest degree. He shows no respect for the law whatsoever. The granting of leniency, in his case, appears to create in him an ever increasing contempt for the law. . . If ever a person deserved the maximum sentence for his crime, it is Gerald Alan George."

We note that the purpose of the habitual traffic offender statute is succinctly stated in § 61-11-201, MCA: "This part is predicated upon the belief and philosophy that innocent drivers and other innocent passengers and pedestrians have a constitutional right to live, free from fear of death or injury from habitual traffic offenders." We find that George has repeatedly shown disregard for Montana laws,

5

disrespect for court orders, and indifference toward the safety of other citizens.

The District Court did not abuse its discretion. The petition for post-conviction relief is denied. The District Court is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

6

Mr. Justice Fred J. Weber specially concurs as follows:

I concur with the conclusions reached by the majority. The first issue is whether the trial court erred in granting the plaintiff's motion for partial summary judgment on the issue of liability. I agree with the conclusion of the majority that BN failed to raise a genuine issue of material fact so that the District Court properly granted summary judgment on the issue of liability. The majority also bases its conclusion on § 26-1-601, MCA, and I disagree with the application of that statute.

In substance the majority concludes that because the claimsman for the BN in the course of his deposition presented no facts to contradict the plaintiff's theory of the case and because the attorney for the BN in the same deposition pointed out at that point the BN was not aware of witnesses who would say it didn't happen that way, that constituted a leading of the plaintiff to believe the railroad was not contesting the plaintiff's credibility concerning how the accident happened. The majority then concludes that the railroad was estopped under § 26-1-601, MCA, from making this argument at trial and may not raise the issue on appeal. Even though the claimsman was not able to dispute the plaintiff's version of how the various accidents happened, and even though the BN attorney stated that they had no basis at that point in time to say the plaintiff was not telling the truth, I do not conclude that this is the type of declaration, act or omission covered under § 26-1-601, MCA. I conclude that the BN would still have a right to contend that the accidents did not occur in the manner detailed by the plaintiff even though they had no witnesses to the accidents.

_____
Justice

17

Mr. Justice L. C. Gulbrandson joins in the foregoing special concurrence.

_____
Justice